(C.D. 2689)

BORDER BROKERAGE COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 24, 1966)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Bernard J. Babb* and *Alfred A. Taylor, Jr.,* trial attorneys), for the defendant.

Before RAO, FORD, and OLIVER, Judges

OLIVER, Judge: The protest in this case relates to the importation of certain merchandise invoiced as "Samco Tru Cut Dados." Each dado, as imported, consists of a circular blade with an integral washer in the center portion and cutting tips welded along the periphery. They were variously referred to in the record as dado cutters, dado heads, and dado saws. The collector constructively segregated them by assessing the blades with duty at 11½ per centum ad valorem as parts of machines under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 54108, and the tips composed of tungsten carbide, at 30 per centum ad valorem under paragraph 352 of said act, as modified by T.D. 51802, as cutting tools of any kind.

Plaintiff contends that the imported dados are dutiable as entireties at 10 per centum ad valorem under paragraph 340 of said act, as modified by T.D. 52739, as circular saws, or as other saws, valued over 5 cents, under the same paragraph, as modified by T.D. 52373 and T.D. 52462, and dutiable thereunder at 7½ per centum ad valorem, or as cutting blades at 10 per centum ad valorem within paragraph 356 of the act, as modified by T.D. 52739 and T.D. 52820.

The modified provisions involved read as follows:

Paragraph 340 of the Tariff Act of 1930, as modified by T.D. 52739:

Circular saws, finished or further advanced than tempered and polished_____ 10% ad val.

Paragraph 340 of the Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52462:

Crosscut saws, finished or further advanced than tempered and polished, hand, back, and all other saws, not specially provided for:
    Valued over 5 cents each:
        Hacksaw blades_____ * * *
    Other _____ 7½% ad val.

Paragraph 356 of the Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52820:

Planing-machine knives, tannery and leather knives, tobacco knives, paper and pulp mill knives, shear blades, circular cloth cutters, circular cork cutters, circular cigarette cutters, meat-slicing cutters, and all other cutting knives and blades used in power or hand machines (not including any stock-treating parts, other than mill knives, for pulp or paper machinery)_____ 10% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:
   *    *    *    *    *    *    *
    Other * * * _____ 11½% ad val.
Parts not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part_____ The rate for the article of which they are parts.

Paragraph 352 of the Tariff Act of 1930, as modified by T.D. 51802:

Cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium _____ 30% ad val.

At the trial, besides the testimony of two witnesses, plaintiff introduced the following four exhibits: Exhibit 1—a representative sample of the imported merchandise; exhibit 2—a grooved piece of wood in which grooves 1 through 4 were cut with an ordinary wood-cutting circular saw blade and grooves 5 through 8 by the imported article; illustrative exhibit 3—the circular saw blade used on exhibit 2; and collective exhibit 4—exhibit 4-A being known as a chamfer saw; 4-B, a beader saw; and 4-C, a head-turning saw.

Mr. Samuel Sam, a resident of British Columbia, Canada, was called as plaintiff's first witness and stated that he was associated with the Samco Engineering Co., Ltd., of British Columbia, the manufacturer of the involved merchandise. Mr. Sam identified plaintiff's exhibit 1 as representative of the imported dados and testified that he is the designer and patent holder. He further explained that the blades, together with the tips in sheet form, are imported into Canada from the United States. There they are processed and assembled into the finished article. When exported into this country, the tips are attached in the manner represented by exhibit 1.

From a series of questions on both direct and cross-examination, the following information was developed through this witness: The dado heads (the name used in advertising them) are attached to the arbor of a power machine and revolve in the workpiece to cut grooves in wood of varying widths; the grooves may be cut lengthwise or crosswise; the dado cuts rather than chips; the washer in the center of the blade is used to set the particular width of the cut desired; the cutting tips are made of tungsten carbide to provide longer life; the dados were not designed to cut metal, nor are they ordinarily used to divide pieces of wood in half; besides the use of the dado head, groove cutting is performed by a standard dado, a cutting device made up of several blades stacked together—the number of blades depending upon the width required—and a wabble-warbler, a device which apparently employs a series of tapered washers mounted with a circular blade to give an angular tilt for groove making; before the advent of the dados, grooves would often be made with ordinary single blade saws; the normal application of a circular saw blade is to cut through wood.

In summary, it was the opinion of the witness that a dado head is a saw with a special application for cutting grooves.

Plaintiff's second witness was Mr. M. Leo Sweeney, also of British Columbia, who testified that he was a barrel manufacturer with plants in Vancouver and Seattle. Because of the shape of barrels, his mills or plants use a great many types of saws. He identified plaintiff's collective exhibit 4 as three saucer saws used in the manufacture of barrel heads. Exhibit 4-C, a head-turning saw, cuts through

the barrel head, which is revolving, and makes the under bevel. At the same time, exhibit 4–A, a chamfer saw, cuts the upper bevel of the barrel head, while exhibit 4–B, a beader saw, cuts the bead or V-shaped edge of the barrel head to about ⅛ of an inch thick. The bead is made to fit into the groove of a barrel to produce a water-tight effect. The beader saw does not cut through the wood, but only along the edge.

On cross-examination, Mr. Sweeney testified that the saucer saws described above were not designed to be put on an arbor for use in sawing through a plank of wood; nor are they used to make grooves in wood. It was his testimony that dados are not used in his plants.

Exhibit 1 contains a circular blade 6 inches in diameter. A metal disc structure (referred to by plaintiff's witness Sam as the washer), approximately 3 inches in diameter, is located in the center of the blade and protrudes in a tapering fashion from each face of the blade. Markings ranging from 1/4 to 13/16 appear in the ridge of each face of the disc. Along the periphery of the blade there are welded eight, equidistant, cutting surfaces or tips. Four of the cutting edges point in one direction while the other four point in the opposite direction. A hole of approximately ⅝ of an inch runs through the center of the washer.

Plaintiff's primary contention is that the imported dados constitute saws having special applications, and further, that they fall squarely within the common meaning of the term "circular saws," as defined by the appellate court in *United States, etc.* v. *Simon Saw & Steel Company*, 51 CCPA 33, C.A.D. 834. In that case, the court of appeals reversed the decision and judgment of this court which had sustained appellee's protest against the collector's classification of certain segmental, metal-cutting saws under paragraph 340 as circular saws, finished or further advanced than tempered and polished. This court had held the articles to be more specifically provided for within the provision for cutting tools of any kind containing the specific amounts of materials mentioned in paragraph 352.

Appellee had argued, *inter alia:* (1) that the provision for circular saws in paragraph 340 is limited to those used for cutting wood, not metal; and (2) that the particular type of construction of the imported articles, namely, a steel disc or blade, to which were attached separate segments or groups of teeth along the periphery, each segment being detachable and replaceable, was not "the circular saw" contemplated by the framers of the 1930 act. The appellate court rejected these arguments. By recourse to several editions of standard dictionaries, it held that the common meaning of the term "circular saws" involved the following criteria only: "a steel disc, teeth on the periphery and use by revolving it on a spindle." The court noted,

too, that there was no qualification as to the materials a circular saw may be designed to cut, citing the following dictionary definition of the noun "saw":

* * * an instrument for cutting or dividing substances, as wood, *iron*, etc., consisting of a thin blade, or plate, of steel, with a series of sharp teeth on the edge, which remove successive portions of the material by cutting and tearing. * * * [Emphasis quoted.]

Although introduced to commerce since the enactment of the 1930 act, the segmental-type saws were found to satisfy the criteria established by the tariff designation "circular saws" in paragraph 340. As such, they were held to be more specifically described than under the provisions for metal-cutting tools or cutting tools of any kind in paragraph 352.

Defendant's brief is noticeably silent as to the effect of this decision on the issue at bar. The position it takes is that a "true" circular saw, as represented by plaintiff's exhibit 3 and as shown in the illustrations accompanying the definitions of "circular saw" in Webster's New International Dictionary (1956 and 1963 editions), is essentially different from the imported articles in the following respects: The teeth of a circular saw, or any true saw, point, face, or slant in the same direction; a circular saw, or any true saw, is used to cut through or divide wood, not to make grooves; no true saw, including a circular saw, contains a raised center portion or washer piece.

What the defendant seems to have done is to substitute the word "true" for the word "typical" or "ordinary" in making this comparative analysis. It is at once apparent from an examination of any edition of Webster's International or Funk & Wagnalls Standard Dictionaries that saws, including circular saws, abound in styles and uses. The 1948 Summary of Tariff Information, volume 3, part 3, page 43, indicates there are over 160 kinds of saws, including a variety of circular saws. The 1941 edition of Funk & Wagnalls New Standard Dictionary of the English Language compiles a partial list of saws of such variety of construction and end use that it belies the singleness of meaning attributed by defendant to the terms "saw" and "circular saw." Among the saws listed, the following have pertinence to the issue before us:

circular saw (a disk having saw-teeth cut or mounted in its periphery, and mounted on an arbor, with which it is rotated, usually at a high speed), * * *.

concave saw (a dished circular saw), * * *.

drunken saw (a circular saw set at an angle to its shaft, so as to make a wider kerf, the width being determined by the tilt of the saw), * * *.

rift-saw (a circular saw, the teeth of which are at the end of radial arms instead of upon the edge of a disk), * * *.

wabble or wobble saw ( a drunken saw), * * *.

rabbet- or rabbeting-saw (for making rabbets, usually having a fence or gage), * * *.

screw-head saw (for nicking or slotting screw-heads), * * *.

gaining-saw (for grooving or channeling instead of for dividing), * * *.

circular grooving-saw [illustrated but not otherwise defined in this partial list].

It would seem, therefore, as the dictionary definition implies, sawing includes not only dividing but channeling, grooving, slotting, and similar cutting operations. Moreover, variety exists not only in operation but also in the attachment and arrangement of the teeth. On the subject of teeth, this same dictionary source tells us:

The teeth of saws are variously shaped. When inclined forward or backward they are said to *rake;* the lateral inclination of alternate teeth to cut a kerf wider than the saw-blade and give better clearance is called *set.* In most saws the teeth are cut, filed, or punched, but in large ones, especially circular saws, inserted and removable teeth are much used.

In an illustration entitled "Forms of Saw-teeth," there appear cutting teeth of many different sizes, shapes, and angles of insertion. Moreover, plaintiff's exhibit 4–C, introduced into evidence as a head-turning barrel saw, has the cutting face of every third tooth on its periphery pointing in the opposite direction from the two which precede and follow. The fact that the circular saw represented by plaintiff's exhibit 3 has its eight cutting-edges facing in one direction, while the dado head exemplified in exhibit 1 has four facing one way and four the other, does not make the one a "true" saw and the other not. What can be said is that the arrangement of saw teeth vary with the work they perform.

The fallacy of limiting the term "circular saws" to the detailed specifications of certain arch-types was exposed in the *Simon Saw* decision, *supra,* where the court stressed essentials as opposed to particulars of construction and use. Specifically the court held:

Paragraph 340 provides for circular saws as such. To meet the requirements of this term, the article must be circular in shape and have a continuous series of teeth on its periphery, and be capable of performing a sawing function.

The stated requirements in nowise relate to qualifications respecting the type of sawing function to be accomplished or the rake, set, and shape of the cutting teeth located along the periphery. The presence of the disclike washer as an integral working part of the blade, while it may be peculiar to the construction of dados, does not materially

alter the character of the instrument. It simply allows for adjustment in the angle of the blade thereby improving the effectiveness of its cutting capabilities in much the same way that stiffeners or backs are added to other types of saws in aid of the cutting function for which they were designed.

The Government also points out that the articles at bar are advertised and sold under the name "dado head" and not as saws. The term "dado head" has been variously defined in standard dictionaries as follows:

Funk & Wagnalls Standard Dictionary (*supra*):

\* \* \* dado-head, *n.* A rotating cutter-head having radial scoring- and cutting-tools in its periphery.

Webster's New International Dictionary (1961, 3d ed.):

dado head, *n.* A power-saw tool made up of two circular saws of equal diameter and one or more chippers and used for cutting flat-bottomed grooves.

The first definition employs general descriptive language which neither explains nor conflicts with the proposition that the imported articles are saws, while the second definition refers to multicutters which the record establishes are the standard dado cutters and not the single-bladed cutters involved here. Without comparative samples before us, it is difficult to judge the similarity or dissimilarity between what the dictionary describes as "circular saws" used in a standard dado and the instrument presently before us.

It has been recognized that, with respect to the classification of such things as the tools of industry, recourse to more precise sources of information than may be found in dictionaries of general use is warranted. *United States* v. *The Spiegel Bros. Corp.*, 51 CCPA 69, C.A.D. 839. To this end we have consulted several technical dictionary and textbook volumes. Of the available materials only the following two offer any light on the issue before us: Kent's Mechanical Engineers' Handbook (12th ed., 1950); Marks' Mechanical Engineers' Handbook (4th ed., 1941).[1] In both volumes, under articles dealing with woodworking machines and woodworking tools, saws are divided into two main groupings—primary and secondary conversion or production saws. Within the grouping of secondary saws, Marks' Handbook, *supra*, lists tenoning, mortising, and dadoing as special-purpose saws. The same classification is given in Kent's Handbook, *supra*, but with a further subdivision which lists the dadoing special-purpose saw as a special-purpose circular saw. Dado heads are also mentioned, together with wobble saws, for use on "variety saw tables,"

---

[1] Both works have been in publication since early in the century with Kent's dating back to 1895. The articles contributed came primarily from experts in various fields of American industry.

one of several types of wood sawing machines described. Furthermore, saws are distinguished from revolving cutter heads in that the former are used to cut kerfs lengthwise or crosswise while the latter are generally usable for lengthwise cutting only.

The purpose of design and the use to which these articles are put are of greater importance in determining identity for classification purposes than the name by which they may be called. *United States v. Quon Quon Company*, 46 CCPA 70, C.A.D. 699. The uncontradicted testimony in this record together with the comparative samples of cross-cutting capabilities as illustrated in plaintiff's exhibit 2 establish that the function of the dados is to cut crosswise and lengthwise grooves in wood. Groove-making is a legitimate sawing function. It is a task performed by "ordinary" circular saws when set at an angle to the shaft of the power machine.

It is also well settled that, unless the contrary is shown, an *eo nomine* designation, without stated limitations, will include all forms of the article provided for. *Nootka Packing Co. et al. v. United States*, 22 CCPA 464, T.D. 47464. Standard dictionaries indicate, and trade manuals consulted support such indication, that the common meaning of the term "circular saw," within the criteria laid down in the *Simon Saw* decision, *supra*, encompasses articles containing a variety of blade and cutting-tooth shapes, dictated by the cutting operation for which they are designed.

The uncontradicted evidence in this case clearly establishes that the dado heads, in their imported condition, constitute complete, individual articles of commerce rendering the collector's constructive segregation of them unsupportable. While other provisions of the tariff act may have application to the imported articles, they appear to be more definitely described, both in terms of construction and use, within the *eo nomine* provision for circular saws in paragraph 340, and are dutiable thereunder at 10 per centum ad valorem. To this extent plaintiff's protest is sustained, and judgment will be rendered accordingly.