(C.D. 4062)

BORDER BROKERAGE COMPANY, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided August 12, 1970)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Peter Jay Baskin*, trial attorneys), for the defendant.

Before RAO, FORD, and LANDIS, Judges

LANDIS, Judge: Plaintiff protests the customs classification of four entries filed at Blaine, Washington, covering merchandise described as "Tru Cut" dadoes, imported from Canada under invoice of Samco Engineering Co., Ltd. A dado head is basically a power saw to cut flat-bottom grooves. (Webster's New International Dictionary, 1968 edition; Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition.)

The "Tru Cut" dadoes involved in this case include a "high speed steel" model; a "carbide" model; a so-called "carbide tipped" dado,

and some described simply as dado "saws". For purposes of our discussion, they are all the same tool, represented by exhibit 5, distinguished only by the cutting tip. Some of the dadoes are carbide tipped and some have a cutting tip made of steel. (R. 5.)

Plaintiff claims that the imported dadoes are properly classifiable as circular saws under TSUS (Tariff Schedules of the United States) item 649.17, dutiable at 8 per centum ad valorem.[1]

A brief description of the dadoes will help point up the customs constructive segregation of the dadoes for classification in part under TSUS item 649.43, as cutting tools containing by weight over 0.2 percent tungsten, dutiable at 30 per centum ad valorem, and in part under the TSUS item 674.50 provision for tool holders, dutiable at 15 per centum ad valorem.

Exhibit 5, representative of the imported dadoes, is the composite of a number of united components. It is not one piece. The working composite (collective illustrative exhibit 6) is a circular metal part with cutting tips brazed to eight fingers that radiate from the curved periphery of the metal part. The remaining composites are two plastic and two aluminum so-called collars or washers, the same size as that marked by the curved periphery of the metal part (one of the aluminum collars is illustratively included in collective exhibit 6); two screws and a bronze bushing. The illustrative aluminum collar has slots or grooves on one side that apparently mate with the plastic collar when both are put flush together and united on one side of the circular metal piece. The composited dado (exhibit 5) thus consists of the center metal working part with cutting tips, two plastic collars flush on each side of the working metal part, two aluminum collars flush on the plastic collars on either side, all held together by two screws with a bronze bushing that passes through the middle so that the dado can slip onto the arm of a power saw. The plastic and aluminum collars on one side have markings for adjusting the width of the groove to be cut by the dado. The overall effect is that of a sophisticated looking circular saw. It is designed to cut grooves in wood for, among other things, shelf construction, drawer construction, box joints and bookcase construction. (Exhibits A and B.)

Both sides, in their briefs, recite that customs liquidated the teeth (cutting tip) part of the dado under TSUS item 649.43 (cutting tools) and the remaining components under TSUS item 674.50 (tool holders). Those items, together with plaintiff's claim under TSUS item 649.17 and the relevant TSUS headnotes provide, in their pertinent context, as follows:

---

[1] We do not reach plaintiff's alternative claim under TSUS item 649.25.

SCHEDULE 6. – METALS AND METAL PRODUCTS
PART 3. – METAL PRODUCTS

\*      \*      \*      \*      \*      \*      \*

Subpart E headnotes:

1. Except for blow and other torches (items 649.31 and 649.32), abrasive wheels mounted on frameworks (item 649.39), tool tips and forms for making tool tips (item 649.53), sewing sets, pedicure or manicure sets, or combinations thereof (items 651.11 and 651.13), and except for knives, forks, spoons, and ladles, all the foregoing which are kitchen or tableware of precious metal, this subpart covers only articles with a blade, working edge, working surface or other working part of—

    (i) base metal;
    (ii) metallic carbides on a support of base metal;
    (iii) natural or synthetic precious or semiprecious stones on a support of base metal; or
    (iv) abrasive materials on a support of base metal, provided that the articles have other functioning or working elements such as cutting teeth, edges, grooves, or flutes.

\*      \*      \*      \*      \*      \*      \*

3. The provisions for "interchangeable tools for hand tools or for machine tools" cover interchangeable tools which are designed to be fitted to hand tools or machine tools and which cannot be used independently, and include, but are not limited to, interchangeable tools for pressing, stamping, drilling, tapping, threading, boring, broaching, milling, cutting, dressing, mortising or screw-driving, but do not include saw blades, knives, or cutting blades, and do not include holding or operating devices even if attached to such interchangeable tools.

\*      \*      \*      \*      \*      \*      \*

Non-mechanical saws, blades for mechanical or non-mechanical saws (including blades in continuous lengths), and metal teeth or cutting segments and other metal parts of such saws and blades:

\*      \*      \*      \*      \*      \*      \*

Blades for mechanical or non-mechanical saws:

\*      \*      \*      \*      \*      \*      \*

649.17                 Circular saw blades_____      8% ad val.

\*      \*      \*      \*      \*      \*      \*

Interchangeable tools for hand tools or for machine tools, including dies for wire drawing, extrusion dies for metal, and rock drilling bits:

\*      \*      \*      \*      \*      \*      \*

649.43         Cutting tools (except tools provided for in item 649.41) with cutting part containing by weight over 0.2 percent of chromium, molybdenum, or tungsten, or over 0.1 percent of vanadium_      30% ad val.

\*      \*      \*      \*      \*      \*      \*

SCHEDULE 6. – METALS AND METAL PRODUCTS

PART 4. – MACHINERY AND MECHANICAL EQUIPMENT

\*      \*      \*      \*      \*      \*      \*

Subpart F headnotes:

1. For the purposes of this subpart—
(a) the term "machine tool" means any machine used for shaping or surface-working—

\*      \*      \*      \*      \*      \*      \*

(iii) wood, cork, bone, hard rubber or plastics, or other hard materials,
whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it, but does not include rolling mills (item 674.20) or the hand-directed or -controlled tools provided for in items 674.60 and 674.70 of this subpart and in item 683.20 of part 5 of this schedule; \* \* \*

\*      \*      \*      \*      \*      \*      \*

Work and tool holders and other parts of, and accessories used principally with, machine tools; tool holders for the mechanical hand tools provided for in items 651.27, 674.70, and 683.20:

674.50         Tool holders_____      15% ad val.

The customs classification, constructively segregating the dadoes into classifiable cutting and holder components, and plaintiff's claim, that the dadoes are circular saw blades, follows the pattern of the customs classification and claim in *Border Brokerage Company, Inc.*

v. *United States*, 56 Cust. Ct. 510, C.D. 2689 (1966), involving dadoes imported under the 1930 Tariff Act, also manufactured by Samco Engineering Co., Ltd. The record before us includes the record and exhibits in that decided case, incorporated by plaintiff, pursuant to rule 20 of the rules of this court, without objection.

Defendant, in its brief, asks us to consider the *Border Brokerage* decision in the following context:

> Accepting for argument sake, without conceding, that the dado saws are entireties, the vital question remains whether articles substantially the same as those involved in *Border Brokerage, supra*, wherein it was held that dado saws were circular saws within the meaning of paragraph 340, Tariff Act of 1930, should be classified as circular saw blades or other blades within the meaning of items 649.17 or 649.25, TSUS. The plaintiff reasons, as best as we can make it out, that the Court's decision in *Border Brokerage, supra*, relying on the decision in *United States et al. v. Simon Saw & Steel Co.*, 51 CCPA 33, 41–42, C.A.D. 834 (1964), wherein it was held that the eo nomine provisions of paragraph 340 prevailed over the more general and less specific designation of the class of cutting tools in paragraph 352, is applicable to the instant case. The crux of plaintiff's argument is stated on page 14 of its brief:

> > Where a given term in a Tariff Act has been judicially interpretated [sic] and thereafter re-enacted in substantially the same language this term if found in a later Act will be given the same interpretation, unless a contrary legislative intent clearly appears.

> We respectfully submit, notwithstanding plaintiff's contention, that the addition of the word "blade" to "circular saw" (the language of paragraph 340) was not intended to change the scope of paragraph 340, that term in item 649.17 – circular saw blades – is not a re-enactment in *substantially the same language* as the term in paragraph 340 – circular saws. There is nothing in the language of the two terms which indicates that they should receive, or were intended to receive the same legislative or judicial interpretation. On the contrary, an examination of the headnote to item 649.17 clearly indicates an intended distinction between the word "saw" and the word "blade." The headnote reads, "*Blades for* mechanical or non-mechanical *saws*." (Emphasis added.) If they were intended to mean the same thing then the headnote would read, "Blade for mechanical or non-mechanical blades." This unlikely reading of the headnote is the reading that plaintiff would have this Court give to the language put forth by Congress.

> \*    \*    \*    \*    \*    \*    \*

> Assuming that this Court finds that the involved articles are entireties as plaintiff contends, and as was held for similar articles in *Border Brokerage*, we contend that the defendant's alternative classification, as an entirety, under item 649.43, as inter-

changeable cutting tools is correct. Notwithstanding plaintiff's contentions, the decisions in *Simon Saw* and *Border Brokerage* support this position. In *Simon Saw* it was held that a tool for sawing was a cutting tool, but that the provision for circular saws was more specific than the provision for cutting tools of any kind. In *Border Brokerage* it was held that a dado saw was a circular saw. Since the TSUS does not have a provision for circular saws and the dado is a circular saw which is a cutting tool, it is properly classifiable under item 649.43. As discussed above the dado saw is more than a blade, and is therefore not excluded from classification under item 649.43 by Headnote 3, Schedule 6, Part 3, Subpart E, TSUS. * * * [Defendant's brief, pages 4, 5, 6.]

Defendant, quite obviously, says nothing in support of the customs classification of the imported dadoes by constructive components. On authority of the decision in *Border Brokerage*, *supra*, these dadoes, in the condition imported, are classifiable as a single commercial entity and not by constructive components. Cf. *Stirn* v. *United States*, 5 Ct. Cust. Appls. 47, T.D. 34092 (1914). Having anticipated this result, defendant substantively contends that the entity (dado) is not a circular saw blade but an interchangeable cutting tool under TSUS item 649.43. As a matter of law, the TSUS headnote on interchangeable tools, *supra*, does not include saw blades. Defendant seeks to negate the headnote and legal effect of the holding in *Border Brokerage*, *supra*, that dadoes are "circular saws", with argument suggesting a distinction of sorts between the tariff term "circular saws" in the 1930 Act and the tariff term "circular saw blades" in TSUS. It finds that distinction in the word "saw" and the word "blade". We find no merit to the distinction. The case law is contrary. The enumeration of various kinds of saws, including "circular saws", in paragraph 340 of the 1930 Tariff Act, is followed by the qualifying words "finished or further advanced than tempered and polished", which "could only apply to the blades of the saws contemplated by the paragraph." *Mill & Mine Supply Co.* v. *United States*, 7 Cust. Ct. 168, 170, C.D. 561 (1941); see also, *Geo. S. Bush & Co., Inc.* v. *United States*, 38 CCPA 30, C.A.D. 435 (1950).

The imported dadoes being, as defendant says, "substantially" the same articles as those before the court in *Border Brokerage*, *supra*, on authority of the decision in that case, we hold that the imported dadoes are circular saw blades dutiable under TSUS item 649.17. That protest claim is sustained.

Judgment will be entered accordingly.